IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSUÉ CARDONA, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY BEAN, and BEAN PROFESSIONAL PSYCHOLOGICAL SERVICES, LLC <br><br> Defendants. | No. 21-cv-01392 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

This case involves a dispute between two mental health professionals over the trademarks "GEEK THERAPY" and "GEEK THERAPIST" used in connection with psychological counseling and mental health services. Plaintiff Josué Cardona, an Illinois resident and citizen, alleges that, since 2012, he has used the marks in connection with his mental health podcast, advertising, and social media posts. (Dkt. 12 at 1–2.) Plaintiff further alleges that Defendants Anthony Bean and Bean Professional Psychological Services, LLC, both citizens of Texas, knew about Plaintiff's use of the marks and were explicitly denied permission to use the marks, yet still employed the marks thereafter and "acted in bad faith by filing applications to register <u>identical</u> trademarks in nearly identical classes of services" with the United States Patent and Trademark Office (USPTO). (*Id.* at 2–3)

On March 12, 2021, Plaintiff filed a complaint in this Court, bringing claims against Defendants for: Trademark Infringement under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count II); Trademark Infringement under Illinois law, 815 ILCS 510/2 (Count III); and Civil Conspiracy to commit Fraud on the USPTO (Count IV).[1]

On May 11, 2021, Defendants filed a motion to dismiss. (Dkt. 8.) According to Defendants, Plaintiff's suit should be dismissed in its entirety under Rule 12(b)(2) of the Federal Rules of Civil Procedure because the Court lacks personal jurisdiction over Defendants. (*Id.* at 2.) Defendants separately move to dismiss Count IV, Plaintiff's fraud claim, under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction based on a lack of ripeness, and under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (*Id.*)

For the reasons that follow, the Court denies Defendants' motion to dismiss all claims under Rule 12(b)(2). Conversely, the Court grants Defendants' motion to dismiss Count IV under Rule 12(b)(1). Because the Court grants Defendants' motion to dismiss Count IV under Rule 12(b)(1), the Court does not address the merits of Defendants' motion to dismiss Count IV under Rule 12(b)(6).

## I. BACKGROUND

Plaintiff, a mental health therapist, created a "counseling model for integrating Geek culture into mental health practice, mental health education, and

---

[1] Plaintiff's complaint also named Eric Eagle Hartmans, attorney of record for the allegedly fraudulent trademark applications, as a defendant. (Dkt. 1 at 1.) Following a confidential settlement agreement, Defendant Hartmans was voluntarily dismissed from this suit with prejudice. (Dkt. 14).

entertainment, called 'GEEK THERAPY.' " (Dkt. 1 at 1.) Plaintiff first adopted and used the GEEK THERAPY trademark on June 24, 2011, when "he started creating, advertising, and distributing, his GEEK THERAPY podcast." (*Id.* at 2.) There are now over 280 episodes of the podcast. (*Id.*) In 2012, Plaintiff created the "Geek Therapy Community" Facebook group, which has over 4,000 members. (*Id.*) Plaintiff also registered the domain name "geektherapy.com" in July 2012. (Dkt. 1, ¶ 16.) Plaintiff has used the GEEK THERAPY and GEEK THERAPIST trademarks on Twitter since 2012 and 2013, respectively, and maintains Twitter and Instragram accounts bearing the GEEK THERAPY name. (*Id.*)

Since 2013, Defendants have known that Plaintiff was using the GEEK THERAPY mark. For example, Defendant Bean first communicated with Plaintiff in November 2013 on Twitter at Plaintiff's "@GeekTherapist" account. (Dkt. 1, ¶ 25; Dkt. 12 at 2.) On January 17, 2017, Defendant Bean joined Plaintiff's Geek Therapy Community on Facebook, and then, on January 26, 2017, asked Plaintiff if he was "interested in collaborating on a book incorporating the name Geek Therapy in the title." (Dkt. 1, ¶ 30; Dkt. 12 at 3.) Plaintiff informed Defendant Bean that Plaintiff was "already working on a Geek Therapy book and that [Defendant] Bean did not have [Plaintiff's] permission to use the name 'Geek Therapy' in the title of [Defendant's] proposed book." (Dkt. 1, ¶ 31.)

According to Plaintiff, Defendants learned in February 2019 that Plaintiff did not have a "federal registration for either the GEEK THERAPY or GEEK THERAPIST trademark" and thereafter "conspired to file an application to register"

3

both marks "in connection with psychological counseling services which if registered, would give Defendant the authority to determine who may or may not use" the marks. (*Id.* ¶¶ 33–37.) Defendants thus filed trademark applications with the USPTO for both "GEEK THERAPY" and "GEEK THERAPIST."[2] (*Id.* ¶¶ 38–39.) Plaintiff learned of Defendant's application on March 1, 2019, and subsequently filed his own application for the "GEEK THERAPY" trademark and filed a timely notice of opposition for both of Defendant's applications. (*Id.* ¶¶ 44–45.)

On August 19, 2019, Defendant Bean used the GEEK THERAPY trademark in connection with a live presentation given in Chicago, Illinois. (*Id.* ¶ 6.) Defendants promoted the presentation on Facebook using a flyer, which described the event as: "A Geek Therapy Presentation By Dr. Anthony Bean, Titled: Video Gamers: Habits, Engagement, or Addiction?, At APA 2019 in Chicago, Illinois on August 11th 2019, Time: 9AM Until 11AM." (*Id.* ¶ 7.) A logo containing the GEEK THERAPY mark also appeared prominently on the flyer. (*Id.*)

## II.  LEGAL STANDARD

A motion under Rule 12(b)(2) tests the federal court's authority to exercise personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2); *see also uBID, Inc. v. GoDaddy Grp., Inc.* 623 F.3d 421, 425 (7th Cir. 2010). Whether a federal court in Illinois has personal jurisdiction "is determined under Illinois' long-arm statute, which authorizes jurisdiction to the full extent permitted by the United States

---

[2] On September 1, 2020, Defendants filed an additional application for the mark "GEEK THERAPEUTICS" to be used in "Education services, namely, providing education training regarding mental health therapy services and role playing therapy for psychological purposes." (Dkt. 1, ¶ 47)

4

Constitution." *Tamburo v. Dworkin*, 601 F.3d 693, 697 (7th Cir. 2010). The United States Constitution permits jurisdiction if it would be "fundamentally fair to require the defendant to submit to the jurisdiction of the court *with respect to this litigation.*" *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) (emphasis in original).

A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction over the case. *See* Fed. R. Civ. P. 12(b)(1); *see also Meyer v. St. John's Hosp. of the Hosp. Sisters of the Third Order of Sta. Francis*, 164 F. Supp. 3d 1083, 1085 (C.D. Ill. 2016). The subject matter jurisdiction of federal courts is limited under Article III of the United States Constitution to cases and controversies. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997). A "case or controversy requires a claim that is ripe . . . ." *Meyer*, F. Supp. 3d at 1085. The doctrine of ripeness is "concerned with *when* a claim is brought." *Id.* (emphasis in original). Ripeness "requires that the Court decide actual controversies and not render advisory opinions," and a "case is not ripe if the 'parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts.'" *Id.* (quoting *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

5

*Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although legal conclusions are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678–79, the Court, in evaluating a motion to dismiss, must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiffs' favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

### III. DISCUSSION

#### A. Personal Jurisdiction

A federal district court has personal jurisdiction if "a court of the state in which it sits would have such jurisdiction." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) (cleaned up); *see NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022). This Court must therefore look to the Illinois long-arm statute. *NBA*, 46 F.4th at 620. The Illinois long-arm statute authorizes the exercise of personal jurisdiction up the limits permitted under the Due Process Clause of the United States Constitution. *See id.*; *see also* 735 ILCS 5/2-209(c). There are two types of Constitutionally-permissible personal jurisdiction: general jurisdiction and specific jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). A court has general jurisdiction over a defendant if the defendant has enough contacts with the state such that he is essentially "at home" in the state. *Id.* A court has specific jurisdiction over a defendant if the suit "arises out of the [defendant's] forum-related activity." *Id.*

Defendants' only contacts with the forum state—Illinois—involve the live

6

presentation made in Chicago on August 19, 2019, and the Facebook promotion of the Chicago presentation leading up to the event, during which Defendants used the GEEK THERAPY trademark. (Dkt. 1, ¶¶ 6–7). Defendants thus argue—and Plaintiff does not dispute—that the Court lacks general jurisdiction over Defendants. Consistent with the parties' views, the Court agrees that general jurisdiction over Defendants is lacking.

That said, the exercise of specific jurisdiction over Defendants is proper. For specific jurisdiction to exist, "the defendant must have 'purposefully directed' its activities to the forum state, and the litigation must relate to those activities." *NBA*, 46 F.4th at 621 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In other words, the defendant must have "minimum contacts" with the forum state that demonstrate that the defendant "avail[ed] [himself] of the privilege of doing business in the state or . . . purposively direct[ed] activities at the state." *Id*. And even where a Defendant has minimum contacts and the litigation relates to those contacts, the exercise of personal jurisdiction must not offend "traditional notions of fair play and substantial justice." *Id*. at 627.

### 1. Minimum Contacts: Purposeful Direction and Relatedness

Defendants argue that Bean's attendance at a "single conference in Chicago in May 2019" is insufficient for exercising specific jurisdiction. (Dkt. 8 at 5–6.) But a single appearance at a conference to give a presentation in Illinois—intentional physical presence in the forum state that causes injury—is, at least in this case, sufficient to establish purposeful direction. In *Curry v. Revolution Laboratories, LLC*,

7

which also involved claims for trademark infringement, the Seventh Circuit found specific jurisdiction proper because the defendant's website permitted customers to select "Illinois . . . among the 'ship–to' options" and provided Illinois customers a confirmation e-mail "thanking them for their business, confirming their order, and listing the Illinois shipping address." 949 F.3d 385, 399–400 (7th Cir. 2020). In other words, the defendant purposefully directed its activities toward Illinois by simply offering and consummating internet sales to Illinois residents, without *any* physical presence within the state.

Defendants' contacts here are more purposeful than in *Curry*. Defendant Bean promoted his presentation on Facebook, explicitly using the allegedly infringing GEEK THERAPY mark and noting the Chicago location. Defendant Bean then traveled to Illinois, where he gave his "Geek Therapy Presentation." This allegedly infringing presentation occurring within the forum state is sufficient minimum contacts for the exercise of specific jurisdiction. *See Indianapolis Colts, Inc. v. Metro. Balt. Football Club Ltd.*, 34 F.3d 410, 411–412 (7th Cir. 1994) (holding that defendant that "entered" state and caused alleged injury to intellectual property rights therein is subject to personal jurisdiction); *cf. GMAC Real Estate, LLC v. E. L. Cutler & Assocs.*, 472 F. Supp. 2d 960, 965–66 (N.D. Ill. 2006) (holding that specific jurisdiction did not exist because defendant did not "enter[]" forum to commit alleged trademark infringement).

Plaintiff's claims are also related to Defendants' contacts with Illinois. As Plaintiff states in his complaint, "Defendant Bean intentionally visited Illinois to

8

conduct a seminar" entitled "A Geek Therapy Presentation" and "promoted the seminar [on Facebook] using 'Geek Therapy.' " (Dkt. 1, ¶ 63) Plaintiff's trademark infringement and unfair competition claims, which are predicated upon Defendant's infringing use of the GEEK THERAPY mark, are therefore related to Defendants' contacts with Illinois. *See NBA*, 46 F.4th at 625–26 (finding relatedness where plaintiff's trademark infringement suit is predicated on defendant's infringing use in forum state). And Plaintiff's conspiracy claim is also related because Defendants allegedly traveled to Illinois "in furtherance of the conspiracy and in a bad faith attempt to establish common law rights in the GEEK THERAPY name." (Dkt. 1, ¶ 46); *see United Phosphorus, Ltd. v. Angus Chemical Co.*, 43 F. Supp. 2d 904, 914–15 (N.D. Ill. 1999) (explaining that acts taken in furtherance of a conspiracy within the forum state are sufficient for specific jurisdiction).

### 2. *"Fair Play and Substantial Justice"*

Even when minimum contacts exist, a defendant "can escape jurisdiction by making a compelling case that forcing it to litigate in the forum state would be so unreasonable as to violate traditional notions of fair play and substantial justice." *Nerds on Call, Inc. v. Nerds on Call, Inc.*, 2008 WL 2225641, at *14 (S.D. Ind. May 27, 2008); *see Burger King*, 471 U.S. at 477 (A defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). To make this determination, the Court may consider: "(1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining the most efficient resolution of the controversies;

9

(4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* at *14–15 (citing *Burger King*, 471 U.S. at 466–67).

Defendants contend that exercising personal jurisdiction would be unreasonable because they "are based entirely out-out-state, do not direct business towards Illinois and have almost no contact with the forum." (Dkt. 8 at 8). Although the Court recognizes the burdens imposed on Defendants, who are Texas citizens, by having to defend against Plaintiff's lawsuit in the Northern District of Illinois, the exercise of personal jurisdiction is reasonable. Illinois has an interest "in providing its citizens with a convenient forum for redressing trademark injuries inflicted by out-of-state actors," especially when the Plaintiff brings claims based on federal *and* Illinois law. *Zimmer, Inc. v. Zimmer Elektromedizin Gmbh*, 2022 WL 1154835, at *15 (N.D. Ind. Apr. 18, 2022); *see PW Stoelting, LLC v. Levine*, 2016 WL 5921818, at *13–14 (E.D. Wis. Oct. 11, 2016) (holding that the "exercise of jurisdiction does not offend traditional notions of fair play and substantial justice" when "alleged injuries from . . . the trademark infringement . . . arose from [defendants'] forum-related activities"). Although Defendants do not live in Illinois, asking Defendants "to defend against alleged wrongdoing in a forum in which it has . . . benefitted isn't constitutionally unfair." *Id.* at *16. Accordingly, the Court's exercise of personal jurisdiction over Defendants is proper, and Defendants' motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure must be denied.

### B. Ripeness

Defendants argue that Plaintiff's civil conspiracy claim based on fraud on the USPTO (Count IV) is unripe because liability for fraud cannot be imposed unless there is a *registered* trademark, not merely a pending trademark *application*. (Dkt. 8 at 8–9). Plaintiff responds that this "Court has jurisdiction over [Plaintiff's] trademark infringement and unfair competition claims," that any decision on those claims "would be determinative of the parties' rights" in the GEEK THERAPY and GEEK THERAPIST trademarks, and thus a decision by this Court would "also determine the outcome of the Opposition proceedings," making the fraud claims ripe for review. (Dkt. 12 at 11–12).

Section 38 of the Lanham Act "tells courts to award damages to persons injured by a registration fraudulently procured in the PTO." *Country Mut. Ins. Co. v. Am. Farm Bureau Fedn.*, 876 F.2d 599, 600 (7th Cir. 1989); *see* 15 U.S.C. § 1120 ("Any person who shall procure registration . . . by a false or fraudulent declaration or representation . . . shall be liable . . . for any damages sustained in consequence thereof."). Registration "does not create the right to use a mark." *Id.* Rather, registration provides other protections such as "incontestability," which makes it "hard for new firms to use" the mark. *Id.* at 601. Unless the PTO grants the application, "the consequences of registration (as opposed to use) do not come to pass, and no damages are 'sustained in consequence thereof.'" *Id.* (quoting 15 U.S.C. § 1120). Claims for fraud on the USPTO have therefore been dismissed as unripe for lack of injury when the Plaintiff files suit before a determination has been made on

11

Defendant's trademark application. *See id.* at 601 (dismissing plaintiff's Section 38 fraud claim as unripe because the defendant's "contested [application] before the PTO may eliminate the justification for litigation"); *Zany Toys, LLC v. Pearl Enters., LLC*, 2015 WL 404644, at *10 (D.N.J. Jan. 28, 2015) (dismissing Section 38 claim because plaintiff can only be injured by alleged fraud if defendant's application is granted).

In this case, Plaintiff can only suffer "damages sustained in consequence" of Defendants' allegedly fraudulent registration application if the USPTO grants the application. Plaintiff maintains that any determination of his trademark infringement and unfair competition claims will necessarily determine whether Defendants' application should be granted or denied. That does not, however, alter the fact that unless Defendant's application is granted by the USPTO, Plaintiff cannot possibly sustain an injury from the alleged fraud. Plaintiff's conspiracy to commit fraud claim is unripe for review, and the Court grants Defendants' motion to dismiss Count IV under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### C. Failure to State a Claim

Because the Court dismisses Count IV for lack of subject matter jurisdiction, the Court does not address Defendants' other arguments for dismissing Count IV based on a failure to state a claim under Rule 12(b)(6).

## IV. CONCLUSION

Defendants' motion to dismiss all counts under Rule 12(b)(2) is denied. Defendants' motion to dismiss under Rule 12(b)(1) is granted, and Count IV is dismissed without prejudice.

12

SO ORDERED in 21-cv-01392.

Date: September 30, 2022

                                                JOHN F. KNESS
                                                United States District Judge